Filed 5/7/26  P. v. Diaz CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>GREGORIO IDABET DIAZ,<br><br>    Defendant and Appellant. | F089058<br><br>(Super. Ct. No. MF015111A)<br><br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  Tiffany E. Organ-Bowles, Judge.

Patrick J. Hennessey, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Kimberley A. Donohue, Assistant Attorney General, Ian Whitney and Joseph Penney, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]     Before Hill, P. J., Peña, J. and DeSantos, J.

# INTRODUCTION

Defendant Gregorio Idabet Diaz (defendant) was convicted of driving under the influence of alcohol and driving with a blood-alcohol content of 0.08 percent or more. In a bifurcated proceeding, the trial court found true that defendant suffered a prior strike conviction of gross vehicular manslaughter while intoxicated. The trial court sentenced defendant to the middle term, doubled due to the strike. Defendant contends on appeal the court erred by imposing the middle term rather than granting probation or imposing the lower term. The People argue defendant was ineligible for probation and the court did not abuse its discretion in imposing the middle term. We agree with the People and affirm the judgment.

# PROCEDURAL SUMMARY

On May 3, 2024, the District Attorney of Kern County charged defendant with driving under the influence of alcohol or drugs (Veh. Code, § 23152, subd. (a); count 1) and driving a vehicle with blood-alcohol content of 0.08 percent or more (Veh. Code, § 23152, subd. (b); count 2), with an allegation under Vehicle Code section 23550.5, subdivision (b) that defendant had previously been convicted of gross vehicular manslaughter while intoxicated (Pen. Code, § 191.5, subd. (a))[1] for both counts. It was alleged defendant had served a prior prison term (see Cal. Rules of Court, rule 4.421(b)(3)) and suffered one prior strike conviction within the meaning of the Three Strikes law (§§ 667, subds. (a)–(e), 1170.12).

A jury found defendant guilty of both counts. In a bifurcated proceeding, the trial court found the prior conviction allegation under Vehicle Code section 23550.5, subdivision (b), the prior prison term allegation and the prior strike conviction allegation true. Prior to sentencing, defendant filed a statement in mitigation, which included a

---

[1]     Hereinafter, undesignated statutory references are to the Penal Code.

*Romero*[2] motion inviting the court to strike the prior strike conviction. The prosecution filed an opposition to the *Romero* motion along with a sentencing statement.

On December 11, 2024, the trial court denied defendant's *Romero* motion. The court sentenced defendant to the middle term of two years, doubled to four years due to the prior strike, on count 1. The same term was imposed but stayed, pursuant to section 654, on count 2.

Defendant filed a timely notice of appeal.

### FACTUAL SUMMARY

On July 29, 2022, at approximately 10:15 p.m., California Highway Patrol Officer Ryan Perez was on duty in a marked patrol vehicle when he observed a white truck in the "fast lane" drift into the center median and nearly hit a sign before swerving back into their lane. The truck continued to swerve in a serpentine motion, from left to right, crossing traffic lanes. Perez followed the truck for one or two miles, observing the driver as he continued to swerve in a serpentine manner. Perez initiated a traffic stop and the truck pulled over to the right shoulder. Perez approached the driver of the truck, who was identified as defendant, and immediately smelled alcohol coming from the vehicle, noted defendant was slow to react, and that defendant's eyes were red and watery.

Perez asked defendant why he was "all over the road," and defendant said nothing was wrong and that he was on his way home after having dinner at a bar and grill. Defendant said he ate pizza and wings around 9:00 p.m. or 9:30 p.m. and admitted to consuming one large draft beer that day, starting at approximately 2:30 p.m. and finishing at 8:00 p.m. During their conversation, Perez noted defendant had red and watery eyes, a heavy odor of alcohol on his breath and person, and that defendant was slurring his words. Perez administered field sobriety tests, during which defendant exhibited numerous "clues" that he was under the influence of alcohol.

---

[2]     *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497.

3.

Defendant initially agreed to submit to a preliminary alcohol screening breath test. However, defendant would not adequately blow into the testing machine. Perez formed the opinion that defendant was over the legal limit of alcohol and was unsafe to drive. Perez arrested defendant and transported him to the hospital for a blood draw.

Criminalist Idolina Fuentes from the Kern County Regional Crime Lab tested defendant's blood sample, which yielded a 0.109 percent alcohol level at the time of the draw. Supervising criminalist David Zimmerman testified that alcohol impairment for safely operating a motor vehicle begins at 0.05 percent. Using retrograde analysis, he estimated defendant's blood-alcohol level at approximately 0.121 percent to 0.139 percent at the time of the stop, depending on variability in elimination rate between 0.01 percent and 0.025 percent per hour. Zimmerman opined that a person in identical circumstances to defendant would be impaired for the purposes of safely operating a motor vehicle.

## DISCUSSION

**Relevant Factual and Procedural Background**

In 2009, defendant was convicted of two counts of gross vehicular manslaughter while intoxicated (§ 191.5, subd. (a)) and, driving under the influence and causing bodily injury to another person (Veh. Code § 23153, subds. (a), (b)). Defendant was sentenced to six years in state prison. Defendant was paroled in April 2014, and discharged from parole in April 2016.

In his statement in mitigation for sentencing, defendant noted that he had not suffered any convictions since the 2009 offenses. Defendant asserted that during the "interim time" between his criminality, he had become "a duly employed citizen and an outstanding employee[,]" "active in his community through his church, and has had a positive impact on numerous people around him[.]" Defendant participated in "alcohol classes … in an attempt to address his alcohol issues."

In opposition, the prosecution noted that defendant's drinking and driving in 2009 "killed two people and injured a third" and was "convicted of three separate strike offenses."  The prosecution argued that taking the lives of two individuals and spending time in prison as a result should have had a deterrent effect on defendant.  But it did not deter defendant, who chose to engage in the exact same conduct by drinking and driving again.

The trial court imposed a four-year sentence offering the following explanation:

> "Circumstances in mitigation are that [defendant] has a limited record of criminal conduct and that [defendant's] prior performance on state parole was successful.  Circumstances in aggravation are that [defendant] served a prior prison term.

> "[Defendant], here's the thing.  I think you know probably better than anybody what happened several years ago was absolutely horrific.  But the problem, sir, is that you didn't learn.  You didn't learn.  You may think you have, but you didn't, because you went out and you drank and you chose to drive.  That's why you are going to prison today and that's—it's on you.

> "Now, when you get out of prison, … what you should do is never let another drink of alcohol pass your lips.  And you better think long and hard before you ever get behind the wheel of a car, particularly if you choose to have something in your system.  It's a very bad idea, and it has not served you well at all.  I do wish you luck, and I hope this never happens again."

**Applicable Law and Standard of Review**

The trial court's sentencing decision is reviewed for abuse of discretion.  (*People v. Sandoval* (2001) 41 Cal.4th 825, 847, superseded by statute on another ground as stated in *People v. Lynch* (2024) 16 Cal.5th 730, 757.)  In reviewing for abuse of discretion, " ' "[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary.  [Citation.]  In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be

5.

set aside on review." ' " (*People v. Carmony* (2004) 33 Cal.4th 367, 376–377 (*Carmony*); see also *People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977–978.) "[A] trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, at p. 377.)

"When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (§ 1170, subd. (b)(1).) The trial court shall order imposition of the lower term if certain numerated circumstances are a contributing factor, "unless the court finds aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice." (§ 1170, subd. (b)(6).) Such contributing factors include if the defendant "has experienced psychological, physical, or childhood trauma," the defendant "is a youth or was a youth … at the time of the commission of the offense," or the defendant "is or was a victim of intimate partner violence or human trafficking." (See *ibid*.)

**Analysis**

Defendant contends the trial court should have granted him a "term of probation with substantial local custody and court ordered counseling" or imposed the low term at sentencing. (Unnecessary capitalization omitted.) In support of his position, defendant claims: (1) there had been a "substantial period of time" between his prior offense and his present offense; (2) "[d]uring that time, he had not been arrested or convicted of any offense and was gainfully employed[; and]" (3) available programs to assist defendant are "more likely to exist on the local level." We conclude defendant fails to demonstrate the court abused its discretion in imposing the middle term.

First, defendant was not eligible for probation because he had suffered a prior strike conviction. (See § 667, subd. (c)(2); [probation shall not be granted if a defendant has been convicted of a felony and has one or more prior strike convictions]; see also

6.

*People v. Johnson* (2003) 114 Cal.App.4th 284, 302, fn. 12.) In order to be eligible for probation, the trial court would have had to grant defendant's *Romero* motion and strike his prior strike conviction. However, the court denied defendant's *Romero* motion and, as the People point out, defendant does not challenge the court's denial of his *Romero* motion. Defendant's failure to raise this claim in his opening brief waives it. (*People v. Duff* (2014) 58 Cal.4th 527, 550, fn. 9.) In his reply brief, defendant suggests his claim that the court should have imposed probation assumes a scenario where "the court agreed with [defendant's] request to strike the prior conviction" and that "the decision to grant probation would necessarily follow the court's favorable ruling on the *Romero* motion." "As a general rule, [courts] do not issue advisory opinions indicating ' "what the law would be upon a hypothetical state of facts." ' " (*People v. Slayton* (2001) 26 Cal.4th 1076, 1084.) Here, the court declined to strike defendant's prior strike conviction and defendant waived his challenge to the court's denial of his *Romero* motion. We will not consider whether probation might have been appropriate in an assumed or hypothetical scenario. Given defendant's prior strike conviction, the court did not abuse its discretion when it denied probation.

Next, defendant fails to demonstrate the trial court abused its discretion in imposing the middle term. Under section 1170, subdivision (b)(1), the middle term is the presumptive term unless aggravating factors, proven beyond a reasonable doubt or stipulated to by the defendant, justify imposition of the upper term. (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1038.) Where mitigating and aggravating factors are balanced, the court must impose the middle term. (See *People v. Leung* (1992) 5 Cal.App.4th 482, 508.) Here, the court considered mitigating factors such as defendant's limited criminal record and his successful performance on parole. The court also considered defendant's aggravating circumstances, such as the prior conviction for a similar alcohol-related offense with a prison term, which was "absolutely horrific" and that defendant showed he did not learn his lesson when he chose to endanger the public

7.

by choosing to drink and drive again. The court considered both mitigating and aggravating circumstances and determined the factors were balanced enough to warrant the middle term. Therefore, the court's decision to impose the middle term was not irrational or arbitrary and within the bounds of reason. (See *Carmony*, *supra*, 33 Cal.4th at p. 377.)

Defendant's argument that the trial court should have imposed the lower term is without support. Although defendant discusses the lower term presumption under section 1170, subdivision (b)(6), he fails to assert that any of the relevant contributing factors apply. Under section 1170, subdivision (b)(6), the lower term is presumptive if any of the following was a contributing factor in the commission of the offense: "(A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation, or sexual violence. (B) The person is a youth or was a youth as defined under subdivision (b) of [s]ection 1016.7 at the time of the commission of the offense. (C) Prior to the instant offense, or at the time of the commission of the offense, the person is or was a victim of intimate partner violence or human trafficking." There is no evidence in the record that defendant experienced either of these as a contributing factor that would trigger the lower term presumption.

Instead, defendant relitigates mitigating factors relied on by the probation department in recommending the lower term: that there was a substantial period of time between his prior strike conviction in 2009 and the current offense, that he had not been previously arrested during that time, that he was gainfully employed, and the availability of programs to assist defendant are at the local level. The record shows the parties discussed these factors and the probation officer's recommendation at the sentencing hearing. Therefore, the court was aware of these factors when it reached its sentencing decision. (See § 1203, subd. (b); *People v. Welch* (1993) 5 Cal.4th 228, 234 [courts must take the probation officer's report and recommendation into consideration]; see also *People v. Stowell* (2003) 31 Cal.4th 1107, 1114 [" 'a trial court is presumed to have been

aware of and followed the applicable law' "].)  However, "[c]ourts are not bound to accept recommendations in the probation report." (*Welch*, at p. 234.)  Defense counsel relied on the probation report to argue for the lower term, but the court was more concerned with the fact that even though defendant's drinking and driving previously took two people's lives, he still had not learned his lesson.  The court's decision to impose the middle term was rational and within the bounds of reason and "will not be reversed merely because reasonable people might disagree." (*Carmony*, *supra*, 33 Cal.4th at p. 377.)

**DISPOSITION**

The judgment is affirmed.